771 F.2d 635
 38 Fair Empl.Prac.Cas. 1344,
38 Empl. Prac. Dec. P 35,536,
103 Lab.Cas. P 11,638
 John C. COOK, et al. (listed in Appendices A and B),
Plaintiffs-Appellants,
v.
PAN AMERICAN WORLD AIRWAYS, INC.; Air Line Pilots
Association, International; Air Line Pilots Association,
Pan Am Chapter; Flight Engineers International Association;
Flight Engineers International Association, Pan Am Chapter,
Respondents-Appellees.
 No. 875, Docket 84-7972.
 United States Court of Appeals,
Second Circuit.
 Argued March 5, 1985.
Decided Aug. 22, 1985.
 
 Jeffrey C. Londa, Houston, Tex. (Butler & Binion, Houston, Tex., Robert E. Cohn, Kevin F. Flynn, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Jeffrey Bernbach, New York City, of counsel), for appellants.
 Richard Schoolman, New York City (Patricia J. Langer, Pan Am Legal Dept., New York City, of counsel), for appellee Pan American World Airways, Inc.
 Robert A. McCullough, Washington, D.C. (Gary Green, Air Line Pilots Ass'n, Int'l, Washington, D.C., of counsel), for appellee Air Line Pilots Ass'n, Int'l.
 Asher W. Schwartz, New York City (O'Donnell & Schwartz, New York City, of counsel), for appellees Flight Engineers' Intern. Ass'n, Pan Am Chapter and Flight Engineers' Intern. Ass'n, AFL-CIO.
 Before MANSFIELD, NEWMAN and KEARSE, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 John C. Cook and more than 400 other current or former Pan American Pilot-Flight Engineers, all over age 40, appeal from a judgment of the Southern District of New York, Robert J. Ward, Judge, dismissing their complaint against Pan American World Airways, Inc. ("Pan Am") and four union defendants--Air Line Pilots Association ("ALPA"), International; ALPA, Pan Am Chapter; Flight Engineers' International Association ("FEIA"); FEIA, Pan Am Chapter--for lack of subject matter jurisdiction. Their complaint alleged that, by adopting and implementing a 1981 seniority list integrating the pilots and flight engineers of two merged airlines, Pan Am and National, the defendants had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 623-31 (1982), and New York Human Rights Law ("NYHRL"), N.Y.Exec.Law Secs. 290, et al. (McKinney 1982 & Supp.1984-85), and that defendant unions had in addition violated the Railway Labor Act, 45 U.S.C. Secs. 151 et seq. (1982). Finding that plaintiffs' action constituted an impermissible collateral attack on a final order of the Civil Aeronautics Board ("CAB"), not appealed in accordance with the provisions of Sec. 1006 of the Federal Aviation Act, 49 U.S.C. Sec. 1486(a), Judge Ward dismissed their complaint for lack of subject matter jurisdiction. We affirm in part, reverse in part, and remand for further proceedings.
 
 
 2
 This case arises out of Pan Am's acquisition of control of and merger with National Airlines, effective January 19, 1980. The merger was approved by the CAB pursuant to 49 U.S.C. Sec. 1378(b), which empowers it to determine whether mergers are "consistent with the public interest" and to approve them "upon such terms and conditions as it shall find to be just and reasonable and with such modifications as it may prescribe". The CAB conditioned its approval of the merger upon compliance with its labor protection provisions ("LPPs"), see Flying Tiger-Slick Merger Case, 18 C.A.B. 326 (1954) (approving airline merger but imposing labor protective conditions and retaining jurisdiction), and retained jurisdiction "to make such amendments, modifications, and additions to the labor protective conditions as the circumstances may require...." CAB Order 79-12-164, at 1. Two of the LPPs are central to this case:
 
 
 3
 "Section 3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 "Section 13(a). In the event that any dispute or controversy * * * arises with respect to the protections provided herein, which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator * * *. The decision of the arbitrator shall be final and binding on the parties."
 
 
 7
 On March 19, 1980, the four unions involved--the ALPA Master Executive Council ("MEC") for the Pan Am pilots, ALPA's MEC for the National Pilots, FEIA's Pan Am Chapter, and FEIA's National Chapter--agreed on a procedure for determining how to integrate the seniority lists. In the event that agreement on seniority integration should not be reached within a limited period arbitration was to be "mandatory," and "[t]he Award of the Arbitrator shall be final and binding as to all flight deck operating crew members and shall be defended by the parties." March 19, 1980, Agreement p 8(j).
 
 
 8
 After unsuccessful inter-union negotiation and mediation on seniority integration, arbitration took place before Lewis M. Gill, whom the parties had designated as their first choice. The four union representatives participated fully in the arbitration hearing, which lasted approximately 35 days and closed on January 14, 1981. Arbitrator Gill subsequently held 15 days of executive session with the union parties. The final record contained over 4,700 transcript pages and hundreds of exhibits. Arbitrator Gill issued his Award on March 12, 1981.
 
 
 9
 In his lengthy opinion explaining the award Gill identified several issues. First, the "cross-bidding" arrangements between pilots and flight engineers at Pan Am were entirely different from those at National. Although both airlines required three crewmen in the cockpit, Pan Am used a pilot/flight engineer ("PFE") as the third crewman, while National used an engineer who was not qualified as a pilot. Pan Am accordingly maintained a single seniority list, with PFEs being allowed to bid for pilot vacancies and fall back to engineer positions, bumping less senior PFEs to avoid furlough. National, however, maintained two independent seniority lists, one for its pilots and one for its flight engineers, and did not permit cross-bidding or displacement between the groups.
 
 
 10
 Having decided not to disturb the premerger cross-bidding situation, Gill constructed two integrated lists. One, the "Pilot List," contained National pilots and all Pan Am airmen; the other, the "Engineer List," contained National engineers and all Pan Am airmen. Gill then directed that cross-bidding be
 
 
 11
 "[a]s before on each airline. Pan Am airmen continue cross-bidding practices vis-a-vis each other, but Pan Am Pilots cannot bump National Engineers. National Pilots cannot bid Engineer positions, National Engineers cannot bid Pilot positions. National Engineers to have same rights as [a small class of Pan Am engineers who did not qualify as pilots] against being displaced from Engineer seats by Pilots." (Award at IV.C.)
 
 
 12
 A second issue, labelled "explosive" by Gill, concerned the manner in which approximately 400 Pan Am pilots on furlough at the time of the merger were to be integrated. This large number of furloughees resulted from Pan Am's switch from smaller planes to B747s, the largest wide-bodied aircraft, and Pan Am's poor financial health in the preceding few years. Gill stated that this furlough situation created"a head-on clash over the relative equities as between large numbers of National airmen hired between 1968 and 1978 and actively employed at the time of the merger, and large numbers of these Pan Am furloughees with earlier dates of hire who still have recall rights but who brought no active jobs to the merger." (Gill Op. at 8).
 
 
 13
 Gill's solution was to calculate the Pan Am furloughees' length of service at the time of their recall, and to slot them into the list by comparing their length of service with that of the active airmen at that time. (An exception was made for about 34 furloughed Pan Am pilots who had received notice of recall before January 19, 1980). He indicated a willingness, had the parties (or the "JANUS" group, representing the furloughees) submitted a proposal estimating the likely dates of recall of the furloughees and the likely length of service of the active pilots at those dates, to integrate the furloughees on that basis. However, no such proposal was forthcoming "[p]erhaps because of the difficulties in fashioning projections of that nature." Id. at 41. While noting that his solution to the furloughee problem might seem novel, Gill observed that
 
 
 14
 "the problem itself is novel--there has not been any previous merger case called to my attention where such massive numbers of furloughees, with such long periods of being off the property, were pitted against active airmen from the other airline who brought current jobs to the merger." Id. at 40.
 
 
 15
 Finally, differences between Pan Am and National created further conflicts between the interests of the various union groups. While Pan Am's fleet consisted primarily of B747s, National mostly used the smaller B727s. Although National was in "a healthy financial condition at the time of the merger," Pan Am had been in financial difficulties over the preceding few years. Because of these and other differences, the parties before Gill advocated three different methods for integrating the seniority lists: (1) the National pilots and engineers advocated "ratio" methods; (2) the Pan Am pilots a mixed length of service ("LOS") and date of hire ("DOH") method; and (3) the Pan Am engineers a straight DOH method. Under a ratio method, a certain number of identified airmen from one airline are listed followed by a similar listing of a specified number of airmen from the other airline (e.g., 1 National pilot followed by 3 Pan Am pilots). The ratios can form all or part of a master list. In the latter case the balance of the list can name airmen on an LOS and/or DOH basis.
 
 
 16
 Gill concluded that a "fair and equitable" solution required that two integrated seniority lists be constructed by different methods. He constructed the entire Engineer List, and the top and bottom of the Pilot list, by a straight LOS/DOH method. However, for the middle portion of the Pilot List he used a mixed-ratio method, which distributed Pan Am and National pilots in a ratio of approximately 3.25 Pan Am pilots for every one National pilot.
 
 
 17
 On March 15, 1981, ALPA mailed copies of the arbitrator's award to all the pilots and on March 25, 1981, FEIA mailed copies to the flight-engineers. On June 26, 1981 Pan American accepted the Gill award and agreed to implement it without change.
 
 
 18
 Two groups of airmen petitioned the CAB to set aside the Gill award. The Janus Group, formed at the time of approval proceedings before the CAB and representing 510 Pan Am crewmen who had been furloughed before the merger, maintained that the Gill award failed adequately to consider the interests of its members and that it was not "fair and equitable" within the meaning of the labor protection provision of CAB Order 79-12-164, at 1. The Janus Group sought a new arbitration in which it would be granted full party status.
 
 
 19
 Pan American Pilots Fighting ("PAPF"), a group of Pan American crewmen who had been employed from dates before the merger, which was formed after the arbitration award to oppose it, argued that the Gill award must be set aside because it used a ratio method to integrate the middle portion of the Pilot List. PAPF maintained that only a "time served" method of integration, either LOS or DOH, was "fair and equitable" and that use of a ratio method was inconsistent with the labor protective provisions that the CAB had imposed in approving the merger. PAPF sought a CAB order integrating the seniority list on a time served basis or renegotiation of the integration with PAPF and the Janus Group as parties.
 
 
 20
 The CAB rejected the two petitions in an order dated April 15, 1982, noting:
 
 
 21
 "The carrier's action is wholly consistent with our long-held, and judicially approved, view that 'absent a showing of bad faith, the adoption by a carrier of an integrated seniority list proposed by the collective bargaining representatives of the employees involved amounts to the carrier having made "provisions * * * for the integration of seniority lists in a fair and equitable manner" within the meaning of section 3 of the Board's labor protective provisions.'[13] It follows, therefore, that we also dismiss Janus Group's and PAPF's petitions to set aside the award.
 
 
 22
 13. Delta-Northeast Merger Case, Order 73-1-24 at 5, aff'd Northeast Master Executive Council v. CAB, 506 F.2d 97 (D.C.Cir.1974), cert. denied, 419 U.S. 1110 [95 S.Ct. 783, 42 L.Ed.2d 806 (1975) ]."
 
 
 23
 CAB Order 82-4-75 at 11.[1] Having concluded that resolution of the seniority integration was reached in a fair and equitable manner, the Board declined to review "the intrinsic nature of the integration system established by the award." Id.
 
 
 24
 The CAB further found that the Janus Group was not entitled to full party status at a new arbitration since its members' interests were adequately represented both by its own statements at several points during the arbitration and by union representation at all stages. It also rejected PAPF's claim that only a "time-served," i.e., LOS or DOH, method of integration was "fair and equitable", finding that Arbitrator Gill acted within his prerogative in using a ratio method to integrate the middle portion of the Pilot List. In making this finding, the Board again confirmed the propriety of its refusing " 'to look behind the freely negotiated list.' " Id. at 12 (quoting Northeast Master Executive Council v. C.A.B., 506 F.2d 97, 105 (D.C.Cir.1974), cert. denied, 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975)). No appeal was taken from the CAB's denial of the two petitions, even though an appeal was available under 49 U.S.C. Sec. 1486, which provides in relevant part that "any" order of the Board "shall be subject to review by the courts of appeals of the United States" which "shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board...." 49 U.S.C. Secs. 1486(a), (d). The statute further provides that the Board's findings, if supported by substantial evidence, shall be conclusive, 49 U.S.C. Sec. 1486(e).[2]
 
 
 25
 The complaint in the present action, which was filed on March 7, 1984, alleged that plaintiffs were all over age 40 and that many had, in the period April 12, 1983 to September 2, 1983, filed in various federal and state equal employment offices charges containing some or all of the allegations stated in the complaint. The complaint charged that the pilot seniority list resulting from the Gill arbitration award, which used a ratio formula "to insert large numbers of former National pilots under age 40 ahead of older and more experienced Pan Am pilots over the age of 40," p 11, was first implemented on a system-wide basis on March 28, 1983, and that it had been and would continue indefinitely to be implemented. Further, the complaint maintained that on June 15, 1983, Pan Am had caused to be furloughed, under the Gill seniority integration, three of the plaintiffs.
 
 
 26
 The complaint further alleged that "[b]y using and adopting, and by indefinitely continuing to use and adopt, the above-described seniority system in making employment decisions" defendant Pan Am has engaged in "willful and continuous violation" of both Sec. 4(a) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 623(a), and Sec. 296 of the New York Human Rights Law, N.Y.Exec.Law Sec. 296; and that the four defendant unions, "[b]y actively supporting and/or acquiescing in, and by indefinitely continuing to actively support and/or acquiesce in, the above-described seniority system," had engaged in "willful and continuous violation" of Sec. 4(c) of the ADEA, 29 U.S.C. Sec. 623(c), and Sec. 296 of the New York Human Rights Law, and that they had thereby breached their duty under the Railway Labor Act, 45 U.S.C. Secs. 151, et seq., to fairly represent the interests of the plaintiffs. Plaintiffs sought injunctive relief, including an order directing defendants to construct and implement a seniority system which eradicated the effects of the allegedly unlawful employment practices described; damages to make them whole; liquidated damages; and attorneys' fees and costs.
 
 
 27
 Pan Am sought dismissal of the complaint on the grounds that the ADEA cause of action was time-barred and that the pendent claim should be dismissed for lack of jurisdiction. ALPA and FEIA also moved for dismissal on the grounds that plaintiffs' ADEA and duty of fair representation claims were time-barred and that the complaint constituted an impermissible collateral attack on a final order of the CAB.
 
 
 28
 At the end of a hearing held on October 31, 1984, Judge Ward issued an oral opinion and an order dismissing plaintiffs' complaint on the ground that it constituted an impermissible collateral attack on a final order of the CAB that had not been appealed in accordance with the provisions of Sec. 1006 of the Federal Aviation Act, 49 U.S.C. Sec. 1486(a). This appeal followed.
 
 DISCUSSION
 
 29
 The principal issue is whether the integrated seniority list formulated by the parties' mutually-selected arbitrator pursuant to the CAB's labor protection provisions may, notwithstanding the CAB decision, be challenged through the present lawsuit on the ground that it violates plaintiffs' rights under the ADEA and the New York Human Rights Law. The starting point for consideration of that issue lies in Supreme Court decisions upholding de novo judicial determination of claims asserted under similar federal statutes, McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (civil rights claim under 42 U.S.C. Sec. 1983); Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Minimum wage provisions of Fair Labor Standards Act); Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII action). Gardner-Denver has particular relevance for the reason that the prohibitions of the ADEA, enacted only a few years after Title VII, are in terms almost identical to those of Title VII, Hodgson v. First Fed. Sav. & Loan Ass'n, 455 F.2d 818, 820 (5th Cir.1972), and both laws have received parallel interpretations. Aronsen v. Crown Zellerbach, 62 F.2d 584, 589 (9th Cir.1981), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). See also Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756-58, 99 S.Ct. 2066, 2071-73, 60 L.Ed.2d 609 (1979).
 
 
 30
 In Gardner-Denver, supra, the Supreme Court unanimously held that, since Congress intended to give federal courts parallel jurisdiction over a de novo proceeding, an employee's statutory right under Title VII to obtain judicial relief from discrimination in his employment is absolute and not barred or waived by his resort to the grievance-arbitration machinery of a collective-bargaining agreement. Congress, said the Court, intended
 
 
 31
 "to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." Id., 415 U.S., at 48-49, 94 S.Ct. at 1019-1020.
 
 
 32
 The Court noted, as reasons for its decision, that the arbitrator's role was "to effectuate the intent of the parties rather than the requirements of enacted legislation," id. at 56-57, 94 S.Ct. at 1023-1024, that the arbitrator's competence "pertains primarily to the law of the shop, not the law of the land," id. at 57, 94 S.Ct. at 1024, that the record of arbitration is usually not as complete as that of a court proceeding, that the rights and procedures common to civil trials are often limited or unavailable and that arbitrators have no obligation to give their reasons for an award. These reasons were echoed and adopted in McDonald in support of the Court's holding that a federal court may not, in a civil rights action under 42 U.S.C. Sec. 1983, give preclusive effect to an arbitration award, concluding that arbitration is not the equivalent of a "judicial proceeding" within the meaning of 28 U.S.C. Sec. 1738. 104 S.Ct. at 1804.
 
 
 33
 Some of the Supreme Court's reasoning may not be as fully applicable to the arbitration proceeding in the present case as it was in Gardner-Denver and McDonald. For instance, the fairness of integrated seniority may have been resolved by the arbitrator consistently with the aims of ADEA. But we are persuaded that this difference in shading is not of sufficient significance to outweigh the statutory entitlement to the de novo determination provided for by Congress in its enactment of ADEA.
 
 
 34
 There remains, therefore, the question of whether, since Arbitrator Gill's order was appealed as of right to the CAB by way of a motion to set it aside and the CAB's resulting order was in turn appealable to a court of appeals, vested by statute with "exclusive jurisdiction" to hear such appeals, the principles of Gardner-Denver and McDonald still apply or whether the order of the CAB must be given collateral estoppel or preclusive effect. The answer turns largely on whether the issue before the administrative agency, in this case the CAB, was the same as that raised in the later court proceedings and whether the administrative agency had the authority to decide that issue. In City of Tacoma v. Taxpayers, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), relied on by the district court, collateral attack was barred when the issue raised by the State of Washington in a proceeding before the state court, the legality and effect of a license issued by the Federal Power Commission, was the same as that raised by it earlier before the Commission itself, which was fully competent to resolve the issue, and was decided upon appeal by the Court of Appeals, which had "exclusive jurisdiction" to review the Commission's order. In Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922), also cited by the district court, collateral attack upon an order of the Interstate Commerce Commission was barred since the issue raised in the later court proceeding was one which the ICC was explicitly empowered to decide.
 
 
 35
 On the other hand, when the administrative agency is neither authorized nor required to decide the issue later raised in a separate action, the court has jurisdiction to entertain the latter claim. In Beins v. United States, 695 F.2d 591 (D.C.Cir.1982), for instance, the court upheld the district court's jurisdiction to entertain a pilot's claim under the Federal Tort Claims Act against the government for damages based on alleged negligence of the Federal Aviation Commission. The government's contention that the plaintiff's sole remedy was an appeal to a court of appeals of the FAA's denial of medical certification was rejected on the ground that the determinations made by a court of appeals "are distinct conceptually from a finding of negligence." Id. at 598.
 
 
 36
 Applying these principles here, the record does not reveal any CAB ruling on the question now raised by the plaintiffs of whether the integrated seniority lists formulated by Arbitrator Gill were unfair as age-discriminatory. The CAB made no independent inquiry into possible age discrimination and held no evidentiary hearing. Indeed, none of the parties presented an issue based on age discrimination to the Board. In opposition to a motion by National Flight Engineers to confirm the award and in support of motions to set it aside, the Janus Group and PAPF argued only that their interests had not been adequately considered by the arbitrator, and that the ratio method used for part of the arbitrator's integrated seniority lists, in contrast to "time served" methods (DOH and LOS), was not a fair and equitable basis for integration.
 
 
 37
 Nor did the CAB indicate that it would have considered itself authorized to rule upon such an issue (unfairness based on age discrimination) if it had been raised. On the contrary, although it reviewed in detail Arbitrator Gill's 59-page decision, it repeatedly made clear that it considered its authority limited to deciding whether the arbitration had been conducted "in a fair and equitable manner " (LPP Sec. 3; emphasis added), i.e., as a procedural matter, rather than whether the terms of the award were substantively equitable. In short, it focused its attention on the procedures used by the parties to negotiate the seniority integration issue, to arrive at terms for arbitration of the issue when the negotiation failed, and to assure fair representation of union members in the arbitration itself.
 
 
 38
 "Our authority, however, over arbitration voluntarily undertaken by employee representatives in connection with a Board-approved acquisition or merger is confined to examining whether the arbitration was fairly and equitably conducted." CAB Order 82-4-75, at 3.
 
 
 39
 The Board's limited review of the merger (of seniority lists) claimed to have violated Sec. 3 of the LPPs is consistent with the limited jurisdiction over labor matters conferred upon it by 49 U.S.C. Sec. 1378(b) and with the Board's own interpretation of the scope of that jurisdiction, which is entitled to considerable weight. See, e.g., Youakim v. Miller, 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976) ("The interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute."); Manchester Environmental Coalition v. E.P.A., 612 F.2d 56, 59 (2d Cir.1979). As the Board has noted, despite its imposition of the LPPs,
 
 
 40
 "it has been the Board's longstanding policy that the matters encompassed herein should be resolved by voluntary agreement between the carrier and the labor groups or employees involved or, failing agreement, by arbitration. This policy with respect to seniority integration is reflected in sections 3 and 13 of the labor protective conditions." American-Trans Caribbean Merger, 57 C.A.B. 581, 585 (1971), aff'd sub nom. American Airlines v. C.A.B., 445 F.2d 891 (2d Cir.1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 681, 30 L.Ed.2d 663 (1972). (Footnotes omitted).
 
 
 41
 The purpose and scope of the LPPs is extremely limited:"[W]e have characterized LPP's as 'an extraordinary intervention ... into the employer-employee relationship.' ... [W]e have repeatedly refused to become entangled in carrier-employee labor disputes, because our jurisdiction is limited, we lack expertise in labor relations, and there are better equipped, more competent forums available to handle labor disputes. Moreover, it is important to recognize that the primary intent of the Board's LPP's historically has been to prevent disruptions in the national air transportation system. Their purpose has not been to benefit carrier employees directly, or to avoid labor unrest with particular air carriers." Texas International-Continental Acquisition Case, CAB Order 81-10-66, at 11 (footnotes omitted).
 
 
 42
 In implementation of its limited authority the Board will scrutinize a freely-negotiated integrated seniority list "only on a showing of bad faith, or deliberate attempt to subvert the Board's order, or other compelling circumstances," Delta-C & S Seniority List, 29 C.A.B. 1347, 1349 (1959), aff'd sub nom. Outland v. C.A.B., 284 F.2d 224 (D.C.Cir.1960). The Board will not find Sec. 3 of the LPP's satisfied unless it determines that the groups of employees affected have been adequately represented in formulating the list.
 
 
 43
 With these exceptions, which go to the "manner" in which the arbitration was conducted, the CAB leaves the resolution of all other issues to the parties or their mutually-selected arbitrator. Indeed, the CAB has acknowledged that a finding by it that seniority lists have been integrated "in a fair and equitable manner" does not necessarily bar petitioners from challenging the legality of the lists themselves in court. In Delta-C & S Seniority List, supra, 29 C.A.B. at 1350, it stated (after rejecting petitioners' claim that the merged list was not fair and equitable), "[w]e take no position on whether petitioners have a cause of action cognizable by the courts." See also Pan Am-TWA Route Exchange Agreement, CAB Order No. 80-6-95, at 4 ("We will not ... review the merits of a challenged [seniority integration list] award, the merits including questions of law and questions of fact."). In a case in which petitioner charged that he had been subjected to age discrimination and sought damages, the CAB explicitly stated that "[a]ge discrimination is outside the scope of the LPP's." Caribbean-Atlantic Airlines, Inc.-Eastern Air Lines, Inc., Acquisition Case, CAB Order 80-10-65, at 2.
 
 
 44
 Thus, because of the ADEA's statutory grant of de novo review and the CAB's lack of authority to adjudicate the age-discrimination issue later raised in the present action, this action is not barred by reason of the collateral attack doctrine. Our conclusion that the district court has jurisdiction to consider the ADEA claims is not inconsistent with the principal authorities relied on by Judge Ward. For reasons already noted, City of Tacoma, supra, and Lambert Run Coal Co., supra, are clearly distinguishable. No ADEA, Title VII or similar claims were asserted in Kesinger v. Universal Airlines, Inc., 474 F.2d 1127 (6th Cir.1973), and Oling v. Air Line Pilots Ass'n, 346 F.2d 270 (7th Cir.), cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965). Those two decisions did not rule upon the substantive fairness of integrated seniority lists but on whether the unions had breached their duty of fair representation before the CAB, an issue over which the CAB has jurisdiction because it bears directly on whether the lists were arrived at in a fair and equitable "manner" as provided for by LPP Sec. 3. But even if the CAB's authority were enlarged to permit it to rule on the substantive fairness of the integrated seniority lists, we believe, for the reasons already stated, that plaintiffs would not be precluded from obtaining a de novo federal court review of that issue. Gardner-Denver, supra; McDonald, supra.
 
 
 45
 We find ourselves unable, for the reasons already indicated, to follow the District of Columbia Circuit's decision in Carey v. O'Donnell, 506 F.2d 107 (D.C.Cir.1974), cert. denied, 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975), upon which Judge Ward relied. The court there held that the district court lacked jurisdiction over plaintiffs' claim that the defendants had violated the ADEA, in view of the court's approval on the same day, in Northeast Master Executive Council v. C.A.B., 506 F.2d 97, cert. denied, 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975), of the Board's dismissal of petitions alleging that the underlying integration of seniority lists had not been arrived at in a "fair and equitable manner." The D.C. Circuit purported to rely on the rationales expressed in Kesinger, supra, and Oling, supra, which are clearly distinguishable for the reasons we have noted above. Moreover, it did not analyze the claims before the district court, the limited authority of the CAB, and the right to a de novo trial of ADEA claims, but merely stated in conclusory fashion that the action amounted to a collateral attack on the seniority lists approved by the Board.
 
 
 46
 Our holding that federal jurisdiction exists over plaintiffs' ADEA claims is not intended to imply that the claims have merit or that plaintiffs will have the right to reopen the integrated seniority lists formulated by the parties' mutually selected arbitrator. Although the complaint's allegations of "willful and continuous violation of Section 4(a) of the ADEA" (Compl. paragraphs 14, 16) at first blush appear to sound in terms of discriminatory intent with respect to each of the plaintiffs, this case is governed by Sec. 4(f)(2) of the ADEA, 29 U.S.C. Sec. 623(f)(2). That section insulates an employer or labor organization from ADEA liability for observing the terms of a "bona fide seniority system ... which is not a subterfuge to evade the purposes" of the ADEA.
 
 
 47
 The criterion for determining whether a seniority system is a "bona fide" one is stated in the pertinent regulation issued under the Act, 29 C.F.R. Sec. 1625.9(a) (1984), which provides that "[t]hough a seniority system may be qualified by such factors as merit, capacity, or ability, any bona fide seniority system must be based on length of service as the primary criterion ...". Since the merged list uses length of service at the top and bottom ends of the list and uses length of service combined with a ratio between the two former lists for the middle of the merged list, it would appear to satisfy the test that length of service be the "primary criterion."
 
 
 48
 With respect to the requirement that a seniority system not be a "subterfuge," a term that implies discriminatory or evasive intent, as in Sec. 703(h) of the Civil Rights Act, 42 U.S.C. Sec. 2000(e)-2(h), see American Tobacco v. Patterson, 456 U.S. 63, 64-65, 102 S.Ct. 1534, 1535-1536, 71 L.Ed.2d 748 (1982), the same regulation states that "a purported seniority system which gives those with longer service lesser rights ... may, depending on the circumstances, be a 'subterfuge to evade the purposes' of the Act." Id. at Sec. 1625.8(b). Among the circumstances to be considered in this case are the validity of the reasons advanced by the unions for the use of a ratio method in the middle of the list, as well as the validity of plaintiffs' claim that defendants have engaged in "willful" discrimination.
 
 
 49
 The mere fact that plaintiffs would have fared better under a different scheme does not show that the merged seniority list is a "subterfuge" to evade the ADEA, especially in view of the distinction that must be drawn between age and seniority, in the absence of any evidence in the present record that the union representatives acted in bad faith or with an age-discriminatory motive in arriving at a compromise, or that Pan Am so acted in accepting and implementing it. That compromise recognized that a straight "time served" method would discriminate unfairly in favor of a large number of furloughed Pan Am pilots against actively employed National pilots bringing jobs with them to the merger, and it therefore adopted a ratio method for the middle portion of the integrated seniority list. As the CAB observed:
 
 
 50
 "Arbitrator Gill was faced with totally opposed positions for the integration of the seniority lists, and the parties were fully permitted to develop their cases supporting their separate positions in a record involving over 4,700 transcript pages and hundreds of exhibits. In the end the arbitrator did what most arbitrators do--he picked parts of the different positions and made compromises to arrive at what he believed was an equitable result. There is no way, given the sharply divergent and contested positions of the parties, that the arbitrator could ever reach a result that was fully acceptable to all parties--to say nothing of the individual pilots and flight engineers whose interests were represented in the proceeding. That is an inevitable result of arbitration. The fact that dissatisfaction remains is no basis for requiring another seniority integration." CAB Order 82-4-75, at 13.
 
 
 51
 Plaintiffs' claim that the defendant unions violated their duty of fair representation in the CAB proceeding stands on an entirely different footing from plaintiffs' ADEA claim. To make out this claim plaintiffs must prove that the "union's conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Subsequent interpretations have established that proof of mere negligence or errors of judgment on the part of the union is insufficient.
 
 
 52
 "To succeed [in a suit for violation of the duty of fair representation] under Sec. 301 [of the Labor Management Relations Act, 29 U.S.C. Sec. 185], an employee must show 'substantial evidence of fraud, deceitful action or dishonest conduct,' ... 'hostile discrimination,' ... arbitrariness or irrationality, ..., or conduct in bad faith....
 
 
 53
 "As long as the union acts in good faith, courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular advantage." (Citations omitted). Capobianco v. Brink's Inc., 543 F.Supp. 971, 975 (E.D.N.Y.1982), aff'd mem., 722 F.2d 727 (2d Cir.1983).
 
 
 54
 The CAB's statutory authority under 49 U.S.C. Sec. 1486(a), as amplified by Sec. 3 of the LPPs, requires it, in order to rule upon whether seniority lists have been integrated in a "fair and equitable manner," to determine whether the unions involved have fairly represented their members in the negotiations and ensuing arbitration proceedings. Moreover, the CAB did just that in the present case. The Board found, as had Arbitrator Gill, that the interests of all the employee groups had been vigorously represented throughout the proceedings and that neither the Janus Group nor PAPF had shown a violation of the unions' duty of fair representation:
 
 
 55
 "Neither group, both formed to forward the views of some Pan Am furloughees and pilots, respectively, who were otherwise represented in the intra-union arbitration by Pan Am Engineers and Pan Am pilots, has shown that these union representatives breached their duty of fair representation. The record before us amply demonstrates that all union parties vigorously advocated positions on seniority integration advantageous to their members. Janus Group, in addition, appeared in the arbitration to express, directly to Arbitrator Gill, its position for furloughees. To the extent that some of the parties failed to prevail in the substance of their views, and hence occasioned disappointment for certain furloughees and pilots, that is not grounds for our review of the intrinsic nature of the integration system established by the award. It is well-settled that the Board properly 'decline[s] to review and to enter judgment on the merits of * * * [union representatives'] negotiated resolution of * * * [an internal union] seniority dispute arising out of a merger' if satisfied 'that the resolution was reached in a fair and equitable manner.' Here, the record shows that the labor parties adopted fair and equitable procedures--four-way negotiation, mediation, and final and binding arbitration--to resolve their differences on merged seniority; and that the procedures were faithfully carried out--even to the unanimous selection of an eminent arbitrator in airline seniority matters." CAB Order 82-4-75, at 11 (footnote omitted).
 
 
 56
 Since the CAB is empowered to and did resolve the fair representation claim, and since plaintiffs are not entitled to de novo adjudication by a district court of that claim, the district court's dismissal of the claim as an impermissible collateral attack on the CAB's final order is affirmed.
 
 
 57
 Appellees next contend that the district court's dismissal of the action should be affirmed on the ground that appellants' ADEA claim is time-barred for failure to file charges with the EEOC within the required 300 days after "the alleged unlawful employment practice occurred". 29 U.S.C. Sec. 626(d)(2). This requires us to "identify precisely the 'unlawful employment practice' of which [the plaintiff] complains." Delaware State College v. Ricks, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). Appellees argue that the unlawful practice here occurred in September 1981 when the Gill arbitration award was filed and published by Pan Am, more than 300 days before plaintiffs' filing of their ADEA charges with EEOC. Plaintiffs, on the other hand, contend that the crucial event for ADEA time-bar purposes did not occur until March 28, 1983, when Pan Am first implemented the alleged discriminatory seniority lists by making assignments in accordance with them, as alleged in Par. 12 of their complaint, and that their claim did not accrue until that time, which was within 300 days prior to the filing of their ADEA charges with the EEOC. Moreover, plaintiffs argue, even assuming their claim first accrued in 1981, the violation was a continuing one, thereby making timely their filing of EEOC charges, and the implementation of the seniority system was not a mere consequence or manifestation of the earlier conduct. See Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981).
 
 
 58
 We have recently held that "[w]hen employees are hired or refused employment pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it, Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 274 (2d Cir.1981), cert. denied, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982), provided such a continuing violation is clearly asserted both in the EEOC filing and in the complaint."[3] Miller v. I.T. & T., 755 F.2d 20, 25 (2d Cir.1985). In Morelock v. NCR Corp., 586 F.2d 1096, 1103 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979), for instance, the court held that "adoption of a seniority system, if discriminatory as to age, constitutes a continuing violation of the ADEA as long as that system is maintained by the employer." See also E.E.O.C. v. Home Ins. Co., 553 F.Supp. 704 (S.D.N.Y.1982); but cf. Bronze Shields, Inc. v. N.J. Dept. of Civil Service, 667 F.2d 1074 (3d Cir.1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982). Applying these principles here, we hold that the alleged discriminatory violations in the present case must be classified as continuous ones, giving rise to claims accruing in favor of each plaintiff on each occasion when the merged seniority list was applied to him, provided he filed such charges with the EEOC, which he would be required to establish on remand, Miller v. I.T.T., supra, 755 F.2d at 25.
 
 
 59
 Appellants' final contention, that appellees should be estopped from asserting the ADEA time-bar defense, needs little discussion. In Price v. Litton Business Systems, Inc., 694 F.2d 963, 965 (4th Cir.1982), the court refused to find estoppel in the absence of a finding that the failure to make a timely filing was in consequence "either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Accord Kriegesmann v. Barry-Wehmiller Co., 739 F.2d 357, 359 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). See also Pfister v. Allied Corp., 539 F.Supp. 224, 227 (S.D.N.Y.1982) (no estoppel where "no allegation that the defendant acted in bad faith or deceitfully lured the plaintiff into settlement discussions, or that it attempted in any way to cause the plaintiff to miss the appropriate filing date").
 
 
 60
 Appellants here have not satisfied their burden on this issue. They make no estoppel argument against Pan Am. Against the defendant unions, they fail to allege detrimental reliance on any union representations. Nor could they do so, in view of Pan Am's posting of the seniority lists in March 1981 and the retention by PAPF in May 1981 of the same law firm that currently represents plaintiffs.
 
 
 61
 The order of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.
 
 
 62
 APPENDIX A
 PLAINTIFFS WHO FILED CHARGES WITH
 E.E.O.C. OR STATE AGENCY
 NAME ADDRESS CITY ST ZIP
AINSWORTH JR 9365 Spencer Las Vegas NV 89123
ALEXANDER DB 18 Birchwood Lane Ramsey NJ 07446
BANDY JM 7 Merwin Bk. Rd. Brookfield Ctr. CT 06805
BARNES KE 2244 Nightingale Dr. Santa Rosa CA 95401
BENTON, JE Rt. 9, Box 275 Goldsboro NG 27530
BERGAD JR P.O. Box 425 Torrington CT 06790
BILLINGS MX 641 S. Rivershire Dr. Conroe TX 77304
BLEDSOE RP P.O. Box 427 Cockeysville MD 21030
BOLING JR 52 Squires Rd. Madison CT 06443
BOWLES ME Rte. 6, Box 168A Charlottesville VA 22901
BROWN JM 204 E. Deer Park Dr. Gaithersburg MD 20877
BURMASTER RA Rte. 1, Box 349 E Leesburg VA 22075
CAMPBELL JD 3718 Divisadero St. San Francisco CA 94123
CARDINAL DP 552 Pinelawn Ave. Belleair FL 33516
CLARKE FR 19 Viejo Way Novato CA 94947
COOK JC 76 Davenport Dr. Stamford CT 06902
COOL CE Box 151 Henderson
 Harbor NY 13651
CORY DC RD 2 Frenchtown NJ 08825
DAHONEY TG 129 Clapp Road Scituate MA 02066
DAVIS MK 4908 Overview Dr.
 Apt. 1212 Arlington TX 76017
DELAVAN WP 67 Highpoint Dr. Gulf Breeze FL 32561
DONNELLY WJ 15601 SW 83rd Ave. Miami FL 33157
DURANT RJ 106 Hessian Hill Dr. Pennington NJ 08534
EAGER CE 103 Lincklaen St. Cazenovia NY 13035
ECKEL R P.O. Box 30664
 JFK Airport Jamaica NY 11430
ENDRESEN DA Box 45
 Botsford Hill Rd. Roxbury CT 06783
FINLEY CB P.O. Box 7671 Woodlands TX 77387
FRAGA RM 1540 Mancha Dr. Boulder City NV 89005
FRANK RK Box 615 Shelter Island NY 11964
FREEMAN CE 7747 Carrleigh Pkwy. Springfield VA 22152
GAUTHIER RW 3322 Cowper St. Palo Alto CA 94306
GRAY JE RFD 1, Box 186 Bethlehem CT 06751
GREEN JG 498 Scotts Lndg. Rd. Southampton NY 11968
GRISEL GR 7475 Estrella Cir. Boca Raton FL 33433
HALL RH P.O. Box KK Wellfleet MA 02667
HAMMES PL 24 Governors Lane Bethel CT 06801
HANDLEY FK 2519 Manhattan Ave. Manhattan Beach CA 90266
HANSEL KA P.O. Box 4021 Burlingame CA 94011
HARGIS RO 225 Montalvo Rd. Redwood City CA 94062
HERNDON WK 42 Crest Dr. Little Silver NJ 07739
HOWE JG P.O. Box 101 Greendell NJ 07839
HUBBARD DG 5926 S. 73rd E Ave. Tulsa OK 74145
JARBOE RL 318 Lake June Dr. Lake Placid FL 33852
KAWAMOTO DK 6850 Glenview Dr. San Jose CA 95120
KELLEY RC 483 NW 105th Dr. Coral Springs FL 33065
KIRKMAN JD 2303 E. 2nd St #3 Bloomington IN 47401
KLAU DA 15 Pond Side Lane West Simsbury CT 06092
KORCHECK SM 1480 Coronet Dr. Reno NV 89509
LEE WR 2106 Oriole CT Fairfield CA 94533
LOCHER AH 151 Clapboard Ridge Danbury CT 06810
LUDWIN RJ RR 1 North Rd. New Milford CT 06776
LYNCH EJ 3002 Yorkshire Rd. Doylestown PA 18901
MALO ME 11500 Fairway Dr. #507 Reston VA 22090
MANIOUDAKIS EX RD 3 Box 372 Somerset NJ 08873
MARKHAM DA 7411 N.W. 8th Court Plantation FL 33317
MATEI MM 1913 Kenilworth Ct. Toms River NJ 08753
MAYO DQ Rte. 2 Box 85,Sunset
 Dr. Ottsville PA 18942
MCAULEY GH 928 Peninsula Ave #409 San Mateo CA 94401
MCGRORY RC 501 East Mill Road Flourtown PA 19031
MCVAY PR Route 1 Box 63 Roxbury CT 06783
MEIXSELL CF 202 Summer Ave. Horsham PA 19044
MILLER JW 15 Greta Dr. Danbury CT 06810
MOON EE 745 Windward Rd. Jackson MS 39206
MURPHY BP 5900 Sarah Ct. Austin TX 78731
NORDMAN VJ 5109 Green Acres Ct. Metairie LA 70003
O'BRIEN WJ 73 Princess Anne Ct. Warrenton VA 22186
O'NEIL RF 474 Pepperwood Ct. Marco Island FL 33937
OBER RI 3 Thornwood Ct. Setauket NY 11733
OLESEK FW 9421 SW 147th St. Miami FL 33176
PARRISH BP 2970 Avalon Ave. Berkeley CA 94705
PAUL RV 8800 SW 123d Ct., J-203 Miami FL 33186
PERRY RA 1152 St. John Place Santa Ana CA 92705
PICKEN WR 48 Big Oak Lane Stamford CT 06903
PLATTE CR 83 Kellogg Dr. Wilton CT 06897
POST RR Route 1 Box 357 Newport WA 99156
RAHISER WS P.O. Box 306 Branford CT 06405
RENNINGS AA Box 124 RD #2,
 Jonestown Rd. Oxford NJ 07863
SALKOVICS AJ 3144 Goldenspur Camarillo CA 93010
SCHWAB EA 2615 Majestic Dr. Wilmington DE 19810
SHEPARD HE 38 Jenkins Rd. Franklin NJ 07416
SLOAN GC 521 Altivo Ave. Watsonville CA 95076
STANNARD LA 129 Newton Ave. Norwalk CT 06851
TAUBERT AR Rte. 3, Foxrun Lane S Newtown CT 06470
UGIANSKIS RX PO Box 16, Candlewood
 Isle New Fairfield CT 06812
VAN WYK PD 68 New Garden Ave. Lancaster PA 17603
WARREN VF P.O. Box 579 Carnelian Bay CA 95711
WEAVER RH 1533 Sopera Ave. Coral Gables FL 33134
WENK PJ 52 Wellsweet Dr. Madison CT 06443
WILDER JB 251 Hickory Lane Roxbury CT 06783
WILLEUMIER RC 618 Hill Street Barrington IL 60010
WIRKKI TK Box 423 Salem NY 12865
WYSARD JF RR 2, Box 91, West
 Lake Rd. Mayville NY 14757
ACKROYD KG 5331 Castle Hills Dr. San Diego CA 92109
BLAYDON CJ 245 West Maple Ave. Langhorne PA 19047
DATER MR RD Box 5 Salisbury CT 06409
DUNPHY WW 4 Limekiln Rd. Ridgefield CT 06877
ENGLISH RB 103 Main St. Centerbrook CT 06409
GASKILL JP 1335 Wood Park Dr. Kennesaw GA 30144
GERT WA 8815 NE 28th St. Bellevue WA 98004
HAKIM PR 1881 Cragin Dr. Bloomfield
 Hills MI 48013
HOLLAND DK 107 Pt O'Woods Dr. Toms River NJ 08753
KURTZ D Paradise Valley Rd.
 RFD #1 Box 310-W Bethlehem CT 06751
MOREY RL 295 Morningsun Ave. Mill Valley CA 94741
NEUMEISTER JT 9 Baldwin Dr. Sussex NJ 07461
RHODES EA 3343 N.E. 116th St. N. Miami Beach FL 33160
STEFFAN KJ 253 Farview Ave. Long Valley NJ 07853
TURNER EB 20 Mt. Foraker Ct. San Rafel CA 94903
WAGER R Skyline Ranch Box 8 Jackson WY 83001
WEAVER LG Elvirasteig 43 1 Berlin 37
 APPENDIX B
 PLAINTIFFS WHO ARE OPTING
 INTO THIS ACTION
 NAME ADDRESS CITY ST ZIP
ABRAHAM JW 12831 Viscaino Rd. Los Altos
 Hills CA 94022
ADAMS FE 8 Autumn Ridge Rd. Weston CT 06883
ADAMS RJ 217 Woodland Dr. Osprey FL 33559
ALFORD TL 83 Robin Ridge Dr. Madison CT 06443
AMOS JI 2703 St. James Rd. Belmont CA 94002
ANDING JD River Rd. Wash Crossing PA 18977
ANTILL WZ 3459 NE 30th Ave. Lighthouse Pt FL 33064
ARCHER EL 506 S. Union Ave. Fergus Falls MN 56537
ARCHER SH 7340 SW 132nd St. Miami FL 33156
ARFSTEN KE 616 Rinaldo St. Santa Rosa CA 95405
AVINELIS FE 825 Wootten Dr. Kerman CA 93630
BAKER FA 17 Betsy Lane Ambler PA 19002
BALDINGER JE P.O. Box 662 Pullman WV 26421
BARKER HM 155 N. Harbor Dr.
 #1712 Chicago IL 60601
BARNETTE JL 140 NE 53 Ct. Ocala FL 32671
BEENE JT 4028 Lynbrook Lane Arlington TX 76015
BEHRE RE 101 Sagamore Dr. Murray Hill NJ 07974
BERDEAUX BJ P.O. Box 66-1335 Miami Springs FL 33266
BERGER RL 3100 NE 49th St. #1102 Ft. Lauderdale FL 33308
BETHEA WD 2716 Creekbed Lane Charlotte NC 28210
BLACK LD RD 8 Box 236 Flemington NJ 08822
BLUM JE 137 Elm St. San Mateo CA 94401
BRAISTED SC 5961 SW 17th St. Plantation FL 33317
BREEN CA 149 Northbridge Ave. Warwick RI 02886
BRICKEY RE 2314 South 22nd E. Salt Lake City UT 84109
BROWNING DG 740 Penfield St. Longboat Key FL 33548
BUTLER DE Wolzogenstr 17 1 Berlin 27
BUTLER RE 3840 Wood Ave. Coconut Grove FL 33133
BUTTERILL JB 4104 NE 16th Ave. Ft. Lauderdale FL 33334
CALVERT JD 10362 Center Dr. Villa Park CA 92667
CANEDY DJ 4666 Vernette Dr. El Cajon CA 92020
CANTARANO TF 3530 W. 187th St. Torrance CA 90504
CARROLL PL 967 W Rambling Dr. W. Palm Beach FL 33411
CASEY TB 18 Ellsworth Park Cambridge MA 02139
CASSOTIS JN 9 Forest St. Londonderry NH 03053
CAVALLARO CF Box 704 Sharon CT 06069
CHAMBERLAIN KS 6677 Villa Bonita Rd. Las Vegas NV 89102
CLACK RH RR Box 380 Hamburg NJ 07419
COHEN SX Bozener Str. 11 1000 Berlin 62
COLES AE RD 1 Box 505-B Stockton NJ 08559
COMPTON HG 1 Cove Rd. Brookfield CT 06804
COOKE WM 407 Sylvia Way San Rafael CA 94903
COOPER DE 240 NW Ferry St. Poulsbo WA 98370
COOPER JD RD #1 Box 93 Columbus NJ 08022
COSHLAND GC 2282 Dosinia Ct. Reston VA 22091
CRISTMAN VD 76 Locker St.,
 P.O. Box 151 Beachwood NJ 08722
CROWL DL 9 Hemlock Dr. Deep River CT 06417
CUNNINGHAM JJ 615 Millcross Rd. Lancaster PA 17601
CUTCHIN AA RFD 2 Box 149 Onancock VA 23417
DAVIS CR P.O. Box 3339 San Clemente CA 92672
DICKINSON DC 1212 Winter Spring B Winter Springs FL 32708
DIETER CJ 258 East Wood Rd. Roxbury CT 06783
DORSEY RM Roxbury Station Roxbury CT 06783
DRENNAN DC 219 Paseo Del Rio Moraga CA 94556
DREW HE 16200 Mt. Rose Highway Reno NV 89511
DUNKLEE JC P.O. Box 4166 Incline Village NV 89450
DWYER DJ 5 Summit St. Rensselaer NY 12144
EUBBS SK 20 Mtn. Laurel Lane Fletcher NC 28732
EDGERLY DF 57 Rita Dr. New Fairfield CT 06810
EGERER RA 1480 Bradley Rd. Bow WA 98232
ELLISON GL 20775 Salida Terr. Boca Raton FL 33433
FAGERLAND DD 6000 93rd Ave. SE Mercer Island WA 98040
FALZARANO VL 7900 SW 146th St. Miami FL 33158
FARRINGTON ID 4260 Pines Rd. Paducah KY 42001
FELL DM P.O. Box 615 Homer AK 99603
FERNANDES DR R.D. 6, Box 342 Flemington NJ 08822
FIGUEROA FH 9280 Font'bleau Blvd. Miami FL 33172
FINDLAY DJ P.O. Box 310 Gig Harbor WA 98335
FLATTER DE 2630 NE 51st St. Lighhouse Pt. FL 33064
FLEISCHER RH 349 Vista Linda Dr. Mill Valley CA 94941
FLYNTZ J 63 Summit Rd. Sparta NJ 07871
FOURNET DJ 154 Gerald Dr. Danville CA 94526
FOXWORTH TG 5449 Rutherford Dr. Woodbridge VA 22193
FRIEND PE 2404 Lakefrt Dr. Knoxville TN 37922
FROST S 2760 NE 23rd Place Pompano Beach FL 33062
FUSTER AS 8125 Westbourne Dr. Pensacola FL 32506
GAGE LC 2255 Sunrise Reno NV 89509
GALLI RP 11 Gill St. Exeter NH 03833
GEORGE RL 6605 Tina Lane McLean VA 22101
GICK RP 2363 Greenswaro S. Warrington PA 18976
GIDDENS DR 390 Everett Place Danville CA 94526
GIROUARD NG 1701 NE 64th St. Ft. Lauderdale FL 33334
GOLIBER JT 25 Pine Hill Bend Ballston Lake NY 12019
GOOLSBY TE RD 1 Sunset Lane Washington Depo CT 60794
GORMAN LR P.O. Box 20862 Billings MT 59104
GREINER RM 465 Harwood Ave. Satellite Bch. FL 32937
GUETTLER DP Gustav Freytag 15 1 Berlin 33
HAMAN DB PO Box 131, Candlewood
 Isle New Fairfield CT 06812
HARLAN RR 5850 Cameron Run Ter. Alexandria VA 22303
HATCH TE 9 Appletree Way Long Valley NJ 07853
HEATHCOCK AD 524 Fawns Walk Annapolis MD 21401
HEEMSTRA JW Winston Dr. Washington Depo CT 06794
HEINRICH RW P.O. Box 1575 Allentown PA 18105
HEWLETT BN Bogus Hill #248 New Fairfield CT 06812
HICKS LM 169 Rutledge Ct. Conroe TX 77302
HOFF TL 1503 Quaker Ridge Austin TX 78746
HOFFMAN DJ 1800 S.W. *647. 75th Terr. Plantation FL 33317
HOFFMAN R 17 Skylark Rd. Bloomingburg NY 12721
HORROCKS AG 56 Old Bridge Rd. Brookfield CT 06804
HUBER DE 420 NE 9th Ave. Ft. Lauderdale FL 33301
HUDSPETH CB 1099 Tilton Rd. Sebastopol CA 95472
HUESMAN MJ 73 Shore Land Dr. Key Largo FL 33037
HUNSBERGER LM 7194 Hillcrest Dr. Macungie PA 18062
HURD TL P.O. Box 1384 Park City UT 84060
HUSKEY BP Rt. 7 Box 163, South
 Rugby Rd. Hendersonville NC 28739
ISRAELITE DX 116 Central Park So. New York NY 10019
JOHNSTON IR 2361 Morrison Lane Suisun CA 94585
JONES JH 741 Marshall St. Beverly NJ 08010
JORGENSEN CW 47 Mohawk Ave. Corte Madera CA 94925
JUNG DH Clayallee 44 1000 Berlin 33
KANE TJ 1228 S. Inverness Way Fresno CA 93727
KANODE JS Wingfield Res. Est.,
 1763 Cocoplum Ct. Longwood FL 32779
KASPAR MA Box 321 Lumberton NJ 08048
KAST R 41 White Pine Dr. Brookfield Ctr. CT 068085
KAY RE RD 2 Box 162E New Hope PA 18938
KELLY PL P.O. Box 331S Rd.,
 Rhododendron Rd. Fitzwilliam NH 03447
KELLY WH 85 Viscount Dr., A-62 Milford CT 06480
KIEHLE GA 1486 Country Club Dr. Los Altos CA 94022
KILLER RE 3309 Melendy Dr. San Carlos CA 94070
KILLMON BC RT 1 Box 756 Moore Haven FL 33471
KLINE WJ P.O. Box 66 Elkton FL 32033
KNOWLES HW 1697 N. Goldeneye Ln. Homestead FL 33030
KNUDSON RC 2200 Panorama Way Salt Lake City UT 84124
LAMAR JW 7007 Erland Rd. Santa Rosa CA 95405
LAMBERT TD Laurel Lane New Castle NH 03854
LARSON LT 5213 NW 58th Court Gainsville FL 32606
LASH JF 578 Caber Drive Santa Rosa CA 95405
LAUMEYER RH Box 548 Teton Village WY 83025
LEET AC 4493 Faraone Court San Jose CA 95136
LEGARE MT 3761 NW 100th Ave. Coral Springs FL 33065
LESTER GT 2171 30th Ave. San Francisco CA 94116
LEWIS EW Box 2102 Castro Valley CA 94546
LIGHT HA 2870 NW 107 Ave. Coral Springs FL 33065
LIVINGSTON DB 19 Stoney Brook Rd. Holmdel NJ 07733
LONGLEY JD 240 Shore Drive P.O.
 Box 567 Ozona FL 33560
LOWRY JR 4 Miller Place Rd. Miller Place NY 11764
MACGLASHAN DH 78 Nut Plains Rd. Guilford CT 06437
MAGUIRE JM Harborview Dr., Box 321 Essex CT 06426
MANCHESTER SA 99 Broadmoor Ct. Novato CA 94947
MANN KA 981 Bluebird St. Naples FL 33942
MARINO JM 25 Spring Garden Ave. Colts Neck NJ 07722
MASON T 350 Orion Court Merritt Island FL 32953
MAYER RL 220 Ersilia Trail Alamo CA 94507
MCALINDEN GI 3 Elm S., PO Box 194 Hopewell NJ 08525
MCCONNELL RH 1330 Concord St. Los Altos CA 94022
MCEWAN JL Rose Farm Center Rd. Lyndeboro NH 03082
MCKAY EA 19 Elizabeth's Way Chatham MA 02633
MCLAY D 920 Lake Forest Rd. Clearwater FL 33575
MCLEAN BE 1116 SW 4th Court Gresham OR 97030
MICHEL FL 3215 Norman Dr. Reno NV 89509
MILLER C 235 Linden Dr. Boulder CO 80302
MILLER KG 764 Berkshire Drive Millbrae CA 94030
MONACO DR P.O. Box 1768 Orinda CA 94563
MONTGOMERY DC 2012 Leisure Dr. NW Winter Haven FL 33881
MOONEY WJ 10900 SW 112th Ave. Miami FL 33176
MORRIS GS 2115 Skyline Blvd. Reno NV 89509
MORRISON HA 18 Plaisted St. Bangor ME 04401
NEEDHAM FS 1777 Coralway North Vero Beach FL 32963
NELSON LM 6999 Estes Dr. Arvada CO 80004
NESSA NA Box 78 Solebury PA 18963
NEWBERRY JI Powersville GA 31074
NEWMAN GM 5530 Ambrose Drive Reno NV 89509
NOLAN CC 4189 Dimhold Court Winston Salem NC 27104
NOTINE DM 503 Bay 5th St. West Islip NY 11795
ODOM HB 220 Jagoe St. Denton TX 76201
OLASZ E P.O. Box 1005 Sanibel FL 33957
OMURA LH First Street Connelly NY 12417
ORR CW 13 E. Townhouse Lane Grand Praire TX 75051
OTT DE P.O. Box 5182 Incline Village NV 89450
OUELLETTE CA 556 So. Ely Blvd. Petaluma CA 94952
PAPA HW 3806 Ashley Dr. S. Mobile AL 36608
PARKER RC 323 Beach Rd.North Wilmington NC 28405
PARKER WS 245 E. 54 St., #15J New York NY 10022
PATE DC Kniephof Str. 26A 1 Berlin 41
PENN RA 4063 N. Canyon Rd. Camino CA 95709
PESZYNSKI PR 1105 Via Media Lafayette CA 94549
PIAVIS WW 4460 Lambert Dr. Kennesaw GA 30144
PINGREY RH 114 Sandalwood Ct. Santa Rosa CA 95401
PLASKON WG P.O. Box 1143 Mill Valley CA 94942
PLATTS RP 2024 Quincy Ct. Salina KS 67401
POIRIER EJ 209 Patricia Ave. Delran NJ 08075
POPE TW 3522 Central Ave. Nashville TN 37205
POUY FR 36 Flying Cloud Rd. Stamford CT 06902
PROFT CJ 4842 Fremont Ave. S. Minneapolis MN 55409
QUIMBY CF 2829 Ellis St. Bellingham WA 98225
RAGLUND JD 980 SW 74th Terrace Plantation FL 33317
REDMAN FW RR #1 Box 432 Bethel CT 06801
REMPE WH Lake Road Newtown CT 06470
ROBBINS RD 13 Winterberry Dr. Amherst NH 03031
ROGERS GA 128 Byram Shore Rd. Greenwich CT 06830
ROSS RM 2335 Odyssey Way Toms River NJ 08753
RUPP RN 6 Summit Ct. Woodbury CT 06798
SABELLA RR 2720 NE 42nd St. Lighthouse Pt. FL 33064
SALISBURY WT 535 Fielder's Lane Toms River NJ 08753
SAVAGE KD 640 Ridgewood Rd. Key Biscayne FL 33149
SCHAKE WE 4039 White Oak Ct. Sonoma CA 95476
SHAVER JK 48 Cottontail Rd. Norwalk CT 06854
SHEASLEY GF 16919 N.E. Clackamas Portland OR 97230
SHELFKO KA Rt. 3, Box 630 B1 Spokane WA 99203
SHUMAN JH 7901 SW 154 Terrace Miami FL 33157
SHUSTER JF RD #1 Achortown Rd. Beaver Falls PA 15010
SLIFKA RL 4359 Mt. Helix,
 Highlands Dr. La Mesa CA 92041
SMITH CD 9903 NW 19th St. Coral Springs FL 33065
SMITH WT 237 Redwood Lane Cheshire CT 06410
SMITHSON RB 2253 Gilman Dr. W. #501 Seattle WA 98119
SONOMURA A 5152 Maple Irvine CA 92714
SPANGENBURG RB 9106 Lyon Park Ct. Burke VA 22015
SPELLANE WD 1020 Aoloa Pl. #208A Kailua HI 96734
STAUFFER DL P.O. Box 2627 Truckee CA 95734
STEGMANN EP 1223 Eddie Dr. Port Orange FL 32019
STEPHENSON JE Janick Strasse 75 1 Berlin 37
STOECKER GG P.O. Box 33-1150 Coconut Grove FL 33133
THIELE GF 2 Pine Tree Hill Rd. Newton CT 06470
THOMAS JR RR #2 Box 952A,
 Hwy. 24 Chester NJ 07930
THOMAS WM 1018 Great Oaks Dr. Hopkinsville KY 42240
THOMPSON JM 26505 Dutcher Creek Cloverdale CA 95425
THORUP JS 1845 N. Santa Rita Tucson AZ 85719
TINGLE TH P.O. Box 3085 Incline Valley NV 89450
TOOKE HW 408 Timber Lane Newton Square PA 19073
VAN NOTE TE 3 Brookview CT Ho-Ho-Kus NJ 07423
VOTRUBA WK 251 Crandon Blvd., #129 Key Biscayne FL 33149
WACHTEL MR 24 Hastings Dr. Northport NY 11768
WAGNER DC 53 Main St. Ridgefield CT 06877
WAGNER RK Rt. 2 Box 144A-5 Umatilla FL 32784
WAGNER RR 165 Penn Harb Rd. Pennington NJ 08534
WALCHLI DC 2524 Laguna Vista Dr. Novato CA 94947
WALTERS AE P.O. Box 37 Pleasant Mount PA 18453
WARD TB 528 Parker Ave. SE Decatur GA 30032
WEBB RB 6420 Boca del Mar
 Dr. #406 Boca Raton FL 33433
WEBER HL 82 Eleven Levels Rd. Ridgefield CT 06877
WIK DC 2610 Patio Simpatico Lake Havasu Cy AZ 86403
WILLETT WA Rt. 1, Box 263 Dundee OR 97115
WILLIAMSON KA 9 Swan Lane Hauppauge NY 11788
WILTJER JR 623 South Pitt St. Alexandria VA 22314
WOOD CL 1809 Edenwald Lane Lancaster PA 17601
WOOLRIDGE DW Rt. 3, Box 81 Muskogee OK 74401
WOOLSEY SD 14 Creekwood Ct. Danville CA 94526
WREN RP RFD 1, Box 516C Heber City UT 84032
YELTON RW 680 Miller Dr. 205W Miami Springs FL 33166
YOUNG GF P.O. Box 76 Stanfordville NY 12581
ZIPRIS M 7411 S.W. 9th St. Plantation FL 33317
TAYLOR GG 10840 Nollwood Dr. Chardon OH 44024
THOMAS HS Unter Den Eichen 114 1000 Berlin 45
THOMPSON JP 22763 A Voss Ave. Cupertino CA 95014
THORNE ED 10467 Plum Tree Lane Cupertino CA 95014
VOGEL RK 1740 Donner Dr. Santa Rosa CA 95404
VAN GORGINER SB 2503 Bethaway Orlando FL 32806
WARE PN 8201 N.W. 37th St. Coral Springs FL 33065
WENTZ RL Box 137 Hope NJ 07844
WHITE RS 15825 S.W. 87th Ave. Miami FL 33157
WILLIAMS DD Holstwig 20 1 Berlin 37
AUSTIN RF 120 Candlewood Hgts. New Milford CT 06776
BARNES PD 35 Mistletoe Dr. Covington LA 70433
BEAN WS Beeren Str. 32-34 1000 Berlin 37 W. Germany
BENTLEY TR 3809 Wooded Creek Dr. Farmers Branch TX 75234
BOMBACH LA 547 W. Shore Tr. Sparta NJ 07871
BROWN RC 16750 S.W. 90 Ave. Miami FL 33157
DOUGHERTY DM RD 7, Box 7544 Stroudsburg PA 18360
ETHERSON JT 428 Norwood Court Fort Myers FL 33907
FENTNER CJ 5322 SW 118 Ave. Cooper City FL 33330
FOSTER MB 246 2nd Ave. Santa Cruz CA 95062
GILKES DE 917 Smith Dr. Metairie LA 70005
HANLEY MD 20400 SW 50th Pl. Ft. Lauderdale FL 33330
HASELBY JW Tegel Flughaven 1000 Berlin 51 W. Germany
HERRERA FM Ten Rod Rd., RR 1,
 Box 472 Exeter RI 02822
HYMAS HV 32492 RD 168 Visalia CA 93291
JENKINS DW 8753 Wimbledon Dr. Knoxville TN 37923
KERREY TW 2100 Country Club Rd. Eustis FL 32726
KOSS CD P.O. Drawer D Miami Springs FL 33266
KYLE AM Blood St. Lyme CT 06371
LANGE RO 1099 31st Ave. San Mateo CA 94403
MARSHALL JF 5 Cove Lane Eustis FL 32726
McCABE JR 1001 Crescent Dr. Greencastle IN 46135
O'CONNOR JH 101 Gray Rock Rd. Trumbull CT 06611
O'DELL T 307 Kent Dr. Cocoa Beach FL 32931
OVERBY WC 7802 Cherry Place Ct. Humble TX 77346
RICH RA 1204 W. Dunne Ave. Morgan Hill CA 95037
SAVOIE JC 6544 Harbour Rd. N. Lauderdale FL 33068
SAXON BF 1092 Serena Way San Marcos CA 92069
SCHLOTE FE 20 Roton Ave. Rowayton CT 06853
SCROGGIN GC 5325 SW 63d Ave. Miami FL 33155
SMITH DP Rt. 1, Box 975B99 Pensacola FL 32507
STULL FP 885 N.W. 6th Dr. Boca Raton FL 33432
TAYLOR JR 5116 S.W. 72d Ave. Miami FL 33155
WATERS DR 411 S.E. 13th Ave. Pompano Beach FL 33060
DOSS WW 14211 SW 104th Ave. Miami FL 33176
CRAHEN RR 3533 4th Lane, SW Vero Beach FL 32962
GAY HM RD #1, Box 1329 Bangor PA 18013
O'BRIEN SA P.O. Box 1104 Hollister CA 95024
STABENAU HM 20439 Interlachen Ln. Troutdale OR 97060
WOLF WA Box 3016 Stateline NV 89449
ZIESMER RA 501 29th Ave. Ct. Poyallup WA 98371
ALMQUIST GN SR #1, Box 127-M Hawley PA 18428
ANDERSON AR Wareneck P.O. Wareneck VA 23178
ACKINSON WP Hohenzollern 1B 1000 Berlin 39
BACON RN 348 Velma Dr. Largo FL 33540
BAILEY C RR #5, Echo Valley Rd. Newtown CT 06420
BISH LW 752 Ridge Dr. McLean VA 22101
BROOKS RS 7440 NW 6th St. Plantation FL 33317
BURGER JJ 5 Woodsvale Rd. Madison CT 06443
BURROGHS WJ, Jr. 9 Maple Ln. Brookfield CT 06804
CRAIG DC 1955 NW 108 Ln. Coral Springs FL 33065
COBB JP Berlin Pilot Mail PAA
 Hangar 17 MR Jamaica NY 11430
CROSS RL 2225 Colusa Hwy. Yuba City CA 95991
FREDERIC GC Box 6152 Incline Vlg. NE 89450
FULLER BB 5072 Country Club Way Pt. Orchard WA 98366
GOELTZ FS 2168 Candelero Santa Fe NM 87505
HUMBLE RA 5770 SW 114th Ter. Miami FL 33156
HAWES LJ 1407 Ball Road Eagle Pt. OR 97527
KANE M Johannisburgeralle 3 1 Berlin 19
KELLEY R 295 Dayton Rd. S. Glastonbury CT 06073
KLEIN RL Box 322 Rowayton CT 06853
KELLEY EG 14300 Clayton Rd. San Jose CA 95127
LAMP RJ 6300 Rogers Circle Lincoln NE 68506
LEINBACH SP, Jr. 317 Fairmont Ave. Winchester VA 22601
LEWIS JW Box 43 Star Rt. Pleasant Mt. PA 18453
LITTLEPAGE MJ 186 Vineyard Rd. Huntington NY 11743
LONG TE 1530 Alabama Dr. Winter Park FL 32789
MEFFERT MD Gelding Hill Rd Sandy Hook CT 06482
McKAY DI Teel Rd. Fairfield NY 13336
MERCIER RD 8 Gina Dr. Centerport NY 11721
NEUWALD EJ Box 4074 Tequesta FL 33458
NEWSTROM HM Box 787 Somis CA 93066
PANZER DA Beergnstrasse Fa 1 Berlin 37
PARRAGA WA Box 3753 Incline Village NY 89450
PENWELL GS 24290 Sailview Dr. Elmira OR 97437
PHILLIPS,CM Fechnerstr. 16 1 Berlin 37
REMELY B 518 N 17th Ave. Bozeman MT 59715
RHODES SS 1956 Port Cardiff Pl. Newport Bch. CA 92660
SMITH LW Rt. 1, Box 420 White Salmon WA 98672
SMITH W Box 962 San Mateo CA 94403
 
 
 
 [1]
 The CAB also dismissed a "Motion for Confirmation and Enforcement of [the] Arbitration Award," filed by flight engineers formerly employed by National, as moot
 
 
 [2]
 We have held that for purposes of review under 49 U.S.C. Sec. 1486(a) the word "order" should be construed liberally. State of New York v. F.A.A., 712 F.2d 806, 808 (2d Cir.1983). Although only final orders are reviewable, McManus v. C.A.B., 286 F.2d 414, 417 (2d Cir.), cert. denied, 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961), we have defined a final order as one which "imposes an obligation, denies a right, or fixes some legal relationship." Rombough v. F.A.A., 594 F.2d 893, 895-96 n. 4 (2d Cir.1979) (citing Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 112-13, 68 S.Ct. 431, 436-37, 92 L.Ed. 568 (1948)). The order in the instant case meets this criterion
 Our conclusion that the CAB order denying the petitions to set aside (rather than the original CAB order approving the merger but retaining jurisdiction to ensure that the LPPs are complied with) is appealable, see, e.g., Northeast Master Executive Council v. C.A.B., supra, 506 F.2d at 100, and consistent with cases in which we have held orders approving a merger to be non-reviewable, Overseas National Airways, Inc. v. C.A.B., 426 F.2d 725, 727 (2d Cir.1970) (CAB orders refusing to expand scope of hearing non-reviewable as merely "threshold determinations," "interlocutory in nature"); McManus v. C.A.B., supra, (CAB orders "relating to various procedural details" not subject to review).
 
 
 [3]
 At the request of the court, plaintiffs have submitted copies of charges filed with the EEOC in which plaintiffs clearly assert ongoing violations of the ADEA. The complaint also alleges ongoing violations. See paragraphs 14-18