John C. COOK, et al., Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Air Line Pilots Association, International, Air Line Pilots Association, Pan Am Chapter, Flight Engineers International Association, Flight Engineers International Association, Pan Am Chapter, Defendants.

F.J. LEWANDOWSKI, et al., Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Air Line Pilots Association International, Air Line Pilots Association, Pan Am Chapter, Flight Engineers International Association, Flight Engineers International Association, Pan Am Chapter, Defendants.

Nos. 84 Civ. 1651 (RWS), 85 Civ. 2371 (RWS).

United States District Court, S.D. New York.

Nov. 6, 1986.

As Amended Nov. 20, 1986.

Hutcheson & Grundy, Houston, Tex., Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Jeffrey M. Bernbach, New York City, for plaintiffs; Jeffrey C. Londa, Houston, Tex., Robert E. Cohn, Kevin Flynn, Washington, D.C., of counsel.

Pan American World Airways, Inc. Legal Dept., New York City, for defendant Pan American World Airways, Inc.; Richard Schoolman, of counsel.

Air Line Pilots Ass'n, Intern., Washington, D.C., for defendant Air Line Pilots Ass'n, Intern.; Gary Green, Jonathan A. Cohen, of counsel.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for defendant Air Line Pilots Ass'n; Sidney Fox, Gerald Richman, of counsel.

O'Donnell & Schwartz, New York City, for defendants Flight Engineers Intern. Ass'n and Flight Engineers Intern. Ass'n— Pan Am Chapter; Asher Schwartz, David Rosen, of counsel.

SWEET, District Judge.

In these cases brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623–31, defendant Pan American World Airways ("Pan Am") and the defendant labor unions, the Air Line Pilots Association ("ALPA"), the ALPA Master Executive Council for the Pan Am Pilots ("ALPA–PAA"), the Flight

Engineers' International Association ("FEIA"), and the FEIA Pan Am Chapter ("FEIA–PAA") (collectively the "Unions"), have moved for summary judgment in their favor. John C. Cook ("Cook"), as the representative of pilots over age 40 employed by Pan Am prior to Pan Am's merger with National Airlines ("National"), challenges as a violation of ADEA the adoption and implementation of a 1981 seniority system integrating the pilot and flight engineer lists of the two merged airlines. Pan Am and the Unions were signatories to the collective bargaining agreement that led to the adoption of the merged system. On the findings and conclusions set forth below, the motions are granted.

**Prior Proceedings**

Cook initiated this action on March 7, 1984, alleging that Pan Am and the Unions, by adopting and implementing a 1981 seniority list integrating the pilots and flight engineers of the two merged airlines, had violated the ADEA and New York Human Rights Law, N.Y.Exec.Law § 296, *et al.* (McKinney 1982 & Supp. 1984–85), and that the Unions had in addition violated the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (1982). The defendants moved this court, the Honorable Robert J. Ward presiding, to dismiss the complaint on the grounds that the federal claims were time-barred, that the pendent claim should be dismissed for lack of jurisdiction and that the complaint constituted an impermissible attack on a final order of the Civil Aeronautics Board ("CAB"). Judge Ward dismissed the complaint for lack of subject matter jurisdiction, finding that the action constituted an impermissible collateral attack on a final order of the CAB not appealed in accordance with the provisions of § 1006 of the Federal Aviation Act, 49 U.S.C. § 1486(a).

On appeal, the Second Circuit affirmed in part, reversed in part, and remanded for further proceedings. It reversed the dismissal of the ADEA claims and remanded on the ground that plaintiffs are entitled to the *de novo* determination in the district court provided for by Congress in its enactment of ADEA. *Cook v. Pan American*

*World Airways, Inc.,* 771 F.2d 635, 641 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986). It noted that this case is governed by § 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), which insulates an employer or labor organization from liability for observing the terms of a "bona fide seniority system ... which is not a subterfuge to evade the purposes" of the ADEA. *Cook,* 771 F.2d at 644. Among the circumstances to be considered with respect to the requirement that a seniority system not be a "subterfuge" are the reasons advanced for the use of a ratio method in the middle of the list as well as the validity of plaintiffs' claim that defendants have engaged in "willful" discrimination. *Id.*

The Second Circuit affirmed the dismissal of the fair representation claim under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.,* as an impermissible collateral attack on the CAB's final order. Finally, it held that plaintiffs' claims were not time-barred since the alleged discriminatory violations were continuous, giving rise to claims on each occasion that the merged seniority list is applied to individual plaintiffs.

Since remand, discovery has gone forward, and has now been completed.

The findings and conclusions set forth below have been reached on the basis of over fifteen affidavits, eleven deposition transcripts, voluminous documentary evidence concerning the arbitration proceedings and oral argument presented by skilled counsel on August 7, 1986. While the conclusions to be drawn from the facts found below are in sharp conflict, the facts are not the subject of dispute.

**Findings of Fact**

In late 1979, the CAB approved the application of Pan Am to merge with National, conditioning that approval on the surviving carriers' acceptance of certain labor protective provisions. CAB Order 79–12–164 at 1. In particular, the CAB directed that "provisions shall be made for the integration of [the Pan Am and National] seniority lists in a fair and equitable manner," CAB Order 79–12–164 § 3, and that a

dispute unresolved by the parties within twenty days "may be referred by any party to an arbitrator." *Id.* § 13(a).

On March 19, 1980, the Unions, the National Airlines Master Executive Council of ALPA ("ALPA–NA") and the National Airlines Chapter of FEIA ("FEIA–NA") entered into an agreement establishing the procedures for integrating the Pan Am and National seniority lists. In part, the agreement provided that arbitration was "mandatory" if merger representatives were unable to agree within a limited time, *see* March 19, 1980 Agreement, ¶ 8(a), and that the lists were to be merged in a "fair and equitable" manner. § 8(f). The agreement designated Lewis M. Gill as arbitrator (the "Arbitrator"), ¶ 8(b), and provided that the Arbitrator's decision "shall be final and binding as to all flight deck operating members and shall be defended by the parties." ¶ 8(j). Because negotiation and mediation were unsuccessful, the question of how to integrate the airman seniority lists was submitted to arbitration. Beginning in September, 1980, the Arbitrator conducted formal proceedings, fully participated in by the parties to the arbitration—FEIA–PAA, FEIA–NA, ALPA–PAA and ALPA–NA. The record of these proceedings covers approximately 35 days of hearings and includes 4,700 transcript pages and hundreds of exhibits. Following the close of the hearings on January 14, 1981, the Arbitrator held two weeks of executive session with the union parties. After a series of informal meetings with the parties, the Arbitrator issued his final award on March 12, 1981 (the "Award").

Pan Am, which was not a party to the arbitration proceedings although its representatives attended all of the hearings, was not required to accept the Award. If it had not accepted the Award, it would been have required to submit the seniority integration dispute to an arbitration in which it would have been a party. That arbitration would have been binding on Pan Am.

Throughout the arbitration, the Pan Am pilots and flight engineers sought integration of the lists based on straight date of hire or length of service, arguing that any inequities could be dealt with by using conditions and restrictions. *See* Gill Opinion, May 11, 1981, at 15. The Pan Am pilots vigorously opposed any ratio that would put any National pilots with shorter length of service ahead of the earlier hired and generally older Pan Am pilots.

According to the National pilots, a straight date of hire ("DOH") or length of service ("LOS") list would be inequitable since National was stronger financially and thus would have offered National airmen greater "expectancies." A DOH or LOS would place the later hired National pilots who brought active jobs to the merger below furloughed Pan Am pilots on the merged list. The National pilots proposed a ratio under which they would be put in positions on the list that would allow them to fulfill their pre-merger expectancies.

**The Award**

In the Award, the Arbitrator established two separate lists, one for the pilots and another for the flight-engineers. As the opinion issued in conjunction with the Award explains, the divergent nature of the respective bidding and bumping practices at each carrier necessitated the establishment of two separate seniority lists. Since 1963 Pan Am has hired its pilots directly to the initial position of flight-engineer. Subsequently, this practice led to the development of bidding rights by flight-engineers for pilot vacancies, and conversely, the right of pilots to bump down into flight-engineer positions. Similar cross-bidding and bumping practices never developed at National because it hired pilots directly into the first officer position, and employed non-pilots as flight-engineers. Thus, National's flight-engineers could never bid into pilot vacancies, and pilots could never bump down into flight-engineer positions. The Arbitrator preserved those two long-standing sets of bidding/bumping practices, noting that Pan Am airmen "[w]ill continue to have the cross-bidding and bumping rights vis-a-vis each other which they have had before" and that Pan Am's bidding practic-

es should not be imposed on the National airmen.

With respect to the engineers' seniority list, the Arbitrator used a straight LOS/DOH method. With respect to the pilots' seniority list, the Arbitrator integrated the Pan Am and National pilots into the top and bottom portions of the list in accordance with date-of-hire and length-of-service. The middle portion of the list challenged here, however, was integrated based upon a ratio method.[1] That method placed 3.25 Pan Am pilots into the list for each National pilot and encompassed seniority numbers 1289–2112 on the pre-merger Pan Am list and 241–496 on the National list. Thus at the middle of the pilots' list one National pilot with relatively less length of service seniority was inserted after about every four Pan Am pilots, who as a group had been hired earlier.

As the Arbitrator explained in his opinion, the complete DOH/LOS list advocated by the Pan Am airmen would have imposed substantial inequities on many National pilots. Specifically, National airmen hired after 1964 would be denied the prospects for advancement to larger aircraft that they could have expected absent the merger. Noting that Pan Am pilots would be subject to no comparable inequity as a result of the ratio, the Arbitrator concluded that a ratio was necessary to insure that the lists were merged in a fair and equitable manner, i.e., that "the airmen on each airline be in a position to fill vacancies in positions for which they had reasonable expectations absent the merger, or positions reasonably comparable thereto or, at least, to achieve a fair balance in the extent to which they may fall short of those expectations." Moreover, since the necessary conditions and restrictions on a straight DOH/LOS list would be very complex and unworkable, a ratio was preferable.

In addition, the Arbitrator noted the record evidence that Pan Am, at the time of the merger, was experiencing financial difficulties with more than 400 pilots on

furlough, many of whom had been on furlough for more than five years. National, on the other hand, was a young domestic carrier with no furloughed pilots. Under these circumstances, he concluded that:

[A] straight DOH list would place a large number of the furloughees who have not worked as Pan Am airmen for five years, and a substantial number with even longer periods since they flew as Pan Am airmen, ahead of large numbers of National airmen who brought active jobs to the merger, including many who had been flying for National for upwards of five years. I regard that as an inequitable result.

(Gill Opinion, at 14).

The flight-engineers' seniority list, however, was integrated completely by DOH/LOS. There, the Arbitrator agreed with FEIA's Pan Am Chapter that the ratio method was unnecessary because the National flight-engineers, not being pilots or pilot-qualified, lacked the same promotion expectations held by the National pilots.

The Arbitrator was aware of the Pan Am pilots' bitter opposition to a ratio, and applied the ratio only as a last resort, and to a limited portion of the list. He noted that ALPA merger guidelines (which, while not binding in this case because of the presence of FEIA, were given weight because most of the affected airmen were ALPA members) authorize such a departure if necessary to achieve an equitable integration. The Arbitrator summarized the ALPA guidelines as follows:

I think it is fair to summarize by saying that these provisions call for giving consideration first to a DOH list, then (if "acceptable accommodation" of the equities is not accomplished by such a list) to look at an LOS list, then (if "satisfactory accommodation" of the equities is still not accomplished) to attempt to accommodate the remaining inequities through temporary restrictions or conditions, and finally (if a "satisfactory accommodation" of the inequities is still not accom-

1. The plaintiffs also challenge certain conditions and restrictions in the Award which were designed to preserve portions of the pre-merger lists.

plished) to try "deviation" from the DOH and LOS manner of constructing the list in order to reach a "fair and equitable solution." This "deviation" has often taken the form of ratio arrangement for all or part of the merged list.

Gill Opinion at 12. The Arbitrator concluded that "there *are* some 'substantial practical inequities' in unrestricted operation of straight length of service which ... could not feasibly be cured in workable and readily administrable fashion by special protective provisions." The ratio that the Arbitrator adopted covers a much smaller portion of the list than the National pilots advocated. In rejecting the National pilots' contention that the ratio should extend farther down the list, the Arbitrator explained that the degree of disparity in length of service between Pan Am and National pilots increased farther down the list and thus, extending the ratio as the National pilots sought would, on balance, result in too great a disparity in length of service between Pan Am and National pilots who would be ratioed together at that point in the list. The Arbitrator also noted that even though those National pilots below the ratio portion would not reach their promotion expectancies until long after the Pan Am airmen on the list near them reached theirs, this inequity was offset by the fact that these National pilots were, on average, younger and thus had more time to reach their expectancies.

In addition to his use of the ratio, the Arbitrator imposed several conditions and restrictions designed to prevent either group of airmen from achieving a "windfall" at the expense of the other, including provisions for cross-over bidding in the event of sale of certain equipment, furlough ratios, and the reservation of 747 slots on a 9 to 1 basis for Pan Am pilots after January 1986.

After issuance of the award on May 18, 1981, the merger representatives presented the award to the company and defended the award before the CAB as they had agreed to do in the four-party agreement. Pan Am, which had not been a party to the four-party agreement or to the proceedings before the Arbitrator, accepted the award in its entirety on June 26, 1981.

At the time of the adoption, Pan Am was aware that pre-merger Pan Am pilots as a group were older than pre-merger National pilots and that any integrated seniority system which disadvantaged pre-merger Pan Am pilots would at the same time disadvantage older pilots. Pan Am did not undertake a detailed cost analysis of the Award or consider the pension and training costs as factors in deciding whether to accept the Award.

While Pan Am did not post a final integrated pilot list until April, 1982, ten months after it adopted the Award, the acceptance of the Award permitted Pan Am to integrate into one system the two separate Pan Am and National systems of aircraft and crews without the prior written consent of ALPA.

## I. Summary Judgment

Pan Am and the Unions have moved for summary judgment dismissing the claims against them in *Cook* and its companion case *Lewandowski*[2] relating to the portion of the list in which the ratio was applied. The motions are based on § 4(f)(2) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(f)(2), which insulates employers and labor unions from liability under the ADEA with respect to a seniority system if the employers and unions observe the terms of a seniority system that is "bona fide" and "is not a subterfuge to evade the purposes" of the ADEA.[3]

2. The Second Circuit's affirmance of the dismissal of the Railway Labor Act claims in *Cook v. Pan Am World Airways, Inc.,* 771 F.2d 635, 646 (2d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986), is dispositive of those claims in *Lewandowski,* which was filed

after *Cook* was dismissed by the district court but which is essentially identical to *Cook.*

3. For the purposes of this motion, the parties seem to assume that the system resulted in a discriminatory impact on older pilots. The evidence now before the court does not necessarily

Fed.R.Civ.P. 56(c) provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment may not be granted if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.

*Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986).

A court must also decide that any disputed issues are not material to the outcome of the litigation. *Id.* Furthermore, a party cannot defeat a motion for summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts," even where it is alleged that evidence to support a claim lies within the exclusive control of the defendants. *Id.*

Therefore, summary judgment is appropriate where the evidence favoring the nonmoving party is insufficient for a jury to return a verdict for that party. *Anderson,* 106 S.Ct. at 2511. This standard mirrors that for a directed verdict under Fed.R. Civ.P. 50(a), which instructs the trial judge to direct a verdict if but one reasonable conclusion as to the verdict can be drawn from the evidence before the jury. *Id.*

## II. Bona Fide Seniority System

■ In order to grant Pan Am's motion for summary judgment,[4] this court must determine that a reasonable jury could only conclude, on the evidence presented, that the system devised by the Arbitrator and adopted and thereafter observed by Pan Am (1) is a "bona fide" seniority system, (2) which is not a "subterfuge to evade the purposes" of the ADEA. The Second Circuit, in reversing a prior dismissal of this case, *see Cook v. Pan American World Airways, Inc.,* 771 F.2d 635, 644 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986), adopted as the criterion for determining whether a seniority system is "bona fide" the standard set forth in the pertinent regulation issued under ADEA by the Equal Employment Opportunity Commission ("EEOC"). That regulation states:

> Though a seniority system may be qualified by such factors as merit, capacity, or ability, any bona fide seniority system must be based on length of service as the primary criterion for the equitable allocation of available employment opportunities and prerogatives among younger and older workers.

29 C.F.R. § 1625.8(a) (1986).

The Second Circuit's observation that this system "would appear to satisfy the test that length of service be the 'primary criterion,'" *Cook,* 771 F.2d at 644,[5] is substantiated by the more fully-developed record now before the court. The flight-engineers' list was based entirely on date of hire and length of service. The pilot list, as merged by the Arbitrator, was based on length of service at the top and bottom ends of the list—fully one-half of the pilot list. Although the "conditions and restrictions" set forth in the Award qualify the entire pilot list, those qualifications were

---

lead to that conclusion. While there is evidence that some older pilots' rights have been diluted with respect to a straight length of service or date of hire system, that standard of comparison is not necessarily the proper one.

**4.** The defendant labor unions will be considered separately, *see infra.*

**5.** Although the Second Circuit commented on this issue, the issue was not actually before the court. Thus, the Second Circuit opinion is not determinative of the outcome here.

designed to preserve, to some extent, some of the rights that pilots had under the pre-merger seniority systems, which were indisputably based on length of service.

The middle portion of the pilot list was compiled by integrating the two pre-merger lists, which were themselves based on length of service, at a ratio of approximately 3.25 Pan Am pilots for every one National pilot, a ratio consistent with the fact that Pan Am had about 3.25 as many active pilots as National.

Although the Arbitrator altered a straight LOS integration, he did so in order to preserve pre-merger expectations of the pilots for each airline. The integration by the Arbitrator of two bona fide seniority lists in a way reasonably designed to preserve pre-merger expectations is itself a bona fide seniority system.

### III. "Subterfuge"

■ The EEOC regulation discussed above also states that:

> Adoption of a purported seniority system which gives those with longer service lesser rights, and results in discharge or less favored treatment to those within the protection of the Act, may, depending upon the circumstances, be a "subterfuge to evade the purposes" of the Act.

29 C.F.R. § 1625.8(b) (1986). The Supreme Court has observed that "subterfuge" in § 4(f)(2) must be given its "ordinary meaning," *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977):

> In ordinary parlance, and in dictionary definitions as well, a subterfuge is a scheme, plan, stratagem, or artifice of evasion.

*Id.* The Second Circuit similarly interprets this section to require discriminatory or evasive intent. Absent evidence that Pan Am or the Unions acted "in bad faith or with an age-discriminatory motive," the "mere fact that plaintiffs would have fared better under a different scheme" is insufficient to show that the system is a "subterfuge" under the ADEA. *See Cook,* 771 F.2d at 644; *see also Air Line Pilots*

*Ass'n, Int'l v. Trans World Airlines, Inc.,* 547 F.Supp. 1221, 1231–32 (S.D.N.Y.1982) (disparate impact alone, without actual intent to discriminate, does not establish an ADEA prima facie case where a seniority system is involved), *aff'd in part and rev'd in part,* 713 F.2d 940 (2d Cir.1983), *aff'd in part and rev'd in part sub nom. Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Among the circumstances to be considered in determining whether or not Pan Am and the Unions acted in bad faith or with an age-discriminatory motive are the validity of the reasons Pan Am put forth for adopting the system and the Unions for agreeing to it, and the validity of Cook's claim that defendants engaged in "willful" discrimination. *Cook,* 771 F.2d at 644. Under *Cipriano v. Board of Educ.,* 785 F.2d 51, 58 (2d Cir.1986), Pan Am and the Unions have the burden of demonstrating that the seniority system is not a "subterfuge."

■ While it is not an absolute requirement that Pan Am and the Unions demonstrate a business or economic purpose to justify a bona fide seniority system, *see United Air Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977), a showing of a "legitimate business reason" for accepting the plan is sufficient to demonstrate that the plan is not a "subterfuge." *See Cipriano v. Board of Educ.,* 785 F.2d 51, 58 (2d Cir.1986).

■ Pan Am's articulated purpose in adopting the Arbitrator's Award was its desire to integrate the airlines as quickly as possible with a system that was "operationally manageable." The record taken as a whole does not give the rational finder of fact a basis for concluding that this was not Pan Am's purpose, despite Cook's claims that the Award did not lead to immediate integration and that Pan Am could not have believed it would. What is important here is what Pan Am believed at the time of adoption of the system.

While it is true that the desire to expedite integration would justify the acceptance of any system, this is, nevertheless, a

valid reason for adopting this system. The issue is not whether Pan Am had a good reason for adopting this system over some other possible system, but whether its purported reason is a pretext for discriminatory intent. *See Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251, 255 (1st Cir. 1986). The circumstances surrounding the adoption of the system demonstrate that Pan Am's justification is no pretext. The fact that the system is not facially discriminatory [6] and was a result of an arbitration whose main objective was to preserve pre-merger expectations in the equitable merger of two seniority lists evidences Pan Am's good faith in adopting the Award. The desire to "get on with its business" is a legitimate business reason for adopting the Award. While Pan Am could have refused to adopt the Award and submitted the issue to another arbitration, binding this time, there was no guaranty that the outcome would not similarly result in older pilots being lower on the list than younger pilots with equal seniority. While Cook alleges that the time actually needed to re-arbitrate the dispute with Pan Am as a party was much less than the time it took for Pan Am to implement the Award, no affirmative evidence has been presented to refute the deposition testimony that Pan Am in good faith made a management decision that adoption of the award would lead more quickly to an integrated system. *See Gray, supra*, 792 F.2d at 255 ("It is not enough … to show that the employer made an unwise business decision, or … acted arbitrarily or with ill will. These facts … do not necessarily show that *age* was a motivating factor").

While the burden of proof is on Pan Am and the Unions to show that the system is not a "subterfuge," *see Cipriano*, 785 F.2d at 58,[7] there is sufficient unrefuted evidence to take that question away from the jury. While it is, of course, difficult to prove lack of discriminatory intent, the fact that such intent is the issue here does not automatically preclude summary judgment. Although Pan Am was aware that Pan Am airmen as a group were older than National airmen and that the new system was not based solely on seniority, there is no direct evidence that Pan Am adopted the system in order to disadvantage older pilots for the benefit of younger pilots. The Arbitrator's lack of discriminatory intent is unquestioned. The eleven depositions taken by Cook support no inference that Pan Am based its decision on the age of the pilots involved.

The evidence on which Cook relies to support the claim of discriminatory intent consists of (1) an affidavit of Dr. Ira S. Chorush, a statistical consultant, which states that the system's impact on older pilots is great and that the probability that the decline in seniority for older pilots occurred by chance is less than one in a million,[8] (2) testimony that Pan Am knew that the Award would diminish the seniority rights of the older Pan Am pilots, and (3) the undisputed statement that Pan Am is a defendant in a separate age discrimination action in which Pan Am is charged with discriminating against pilots over 60 years old and in which a proposed settlement was overruled by the district court, given the likelihood of success on the merits. *See EEOC v. Pan American World Airways*,

---

**6.** While the Arbitrator's Award clearly diluted the pre-merger seniority rights of some Pan Am pilots, it was not facially obvious that the rights of older pilots were affected.

**7.** Where a seniority system is in issue, at least one court in this Circuit has suggested that plaintiffs must show discriminatory intent as part of their prima facie case. *See Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.*, 547 F.Supp. 1221, 1231 (S.D.N.Y.1982), *aff'd in part and rev'd in part*, 713 F.2d 940 (2d Cir. 1983), *aff'd in part and rev'd in part*, 469 US. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Un-

der that standard, plaintiffs would bear the burden of making a showing sufficient to establish the existence of that essential element. *See Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**8.** The probative value of this statement is questionable since, as ALPA points out in its reply memorandum of law, the decline in seniority for Pan Am pilots concededly did not occur by chance; it was the result of a conscious attempt to satisfy the pre-merger expectations of both National and Pan Am pilots.

*Inc.,* 622 F.Supp. 633 (N.D.Cal.1985), *appeal dismissed,* 796 F.2d 314 (9th Cir.1986). In the face of Pan Am's showing, Cook's evidence is insufficient to support an inference of discriminatory intent.

Despite the undisputed evidence of legitimate business purpose and the lack of direct evidence of discriminatory intent, Cook asks this court to deny summary judgment on the ground that Pan Am's actions were a "subterfuge" because Pan Am adopted the pilot seniority in "reckless disregard" of whether its conduct discriminated against older workers. The evidence establishes that Pan Am did not make any study or survey concerning ADEA implications. Cook asks this court, in essence, to hold that Pan Am must make a good faith effort to learn and comply with the ADEA's requirements to obviate a finding of "reckless disregard" on these facts.

To date, no decision has equated reckless disregard with subterfuge. Cook seeks to achieve that link by using the Second Circuit's directive in the first appeal, *see Cook,* 771 F.2d at 644, that the validity of plaintiffs' claim that defendants engaged in "willful" discrimination is to be considered in connection with the subterfuge issue. Cook then cites *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), which held that a defendant "willfully" violates the ADEA, and thus is liable for double damages under § 626(b), if the plaintiff can meet the heightened level of proof that the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128 (citing *Air Line Pilots Ass'n, Int'l. v. Trans World Airlines, Inc.,* 713 F.2d 940, 956 (2d Cir.1983)).

Even if the Second Circuit intended by this single phrase to expand the defendant's burden of proof to require a showing that he did not willfully discriminate, the subsequent Second Circuit decision in *Cipriano,* 785 F.2d 51, indicates that this further showing is not necessary. As discussed *supra, Cipriano* holds that a showing of a "legitimate business reason" for accepting the plan is sufficient to demonstrate that the plan is not a "subterfuge." Since a legitimate business reason has been shown here, defendants do not have to go further and demonstrate a lack of willfulness. This conclusion is supported by the language of the Act itself.

Although Cook asks the court to require a defendant such as Pan Am to examine any prospective seniority system for a possibly negative impact on older workers, they do not suggest a standard against which the "negative impact" is to be measured. The Second Circuit has stated explicitly that the "mere fact that plaintiffs would have fared better under a different scheme does not show that the merged seniority list is a 'subterfuge' to evade the ADEA." *Cook,* 771 F.2d at 644. Presumably plaintiffs are requesting the court to hold that Pan Am must put older pilots in the same position or better than younger pilots with the same seniority, either as an absolute rule or absent a specific reason for elevating the particular younger individual over the older. In practical terms, this would require any large-scale arbitration award, resulting from a merger or otherwise, to observe strict seniority, despite legitimate reasons for deviating from strict seniority, such as preserving pre-merger expectations.

By outlawing plans that are a subterfuge to evade the Act's ban on discrimination on the basis of age, Congress did not intend to dictate the outcome of an arbitration free of discriminatory intent on the part of the arbitrator and the parties. It is enough that Pan Am and the Unions did not base their decisions to adopt and comply with the Award on the basis of the ages of the pilots. To decide otherwise would be to require arbitrators to always reach a decision on the basis of age, despite a clear mandate to the contrary. *See Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981) ("ADEA mandates that an employer reach employment decisions without regard to age"), *cert. denied,*

455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

Even if this court were to adopt the "willfulness" standard espoused by plaintiffs, summary judgment on this issue would, nevertheless, be appropriate. Pan Am concededly knew that the system created by the Award had a disproportionate impact on the seniority rights of Pan Am pilots, who were older as a group than the National pilots. Nevertheless, Pan Am was justified in relying on the arbitration process in which the age of the pilots was a major concern, and in relying on its own legitimate business reason for adopting the Award.

## IV. The Labor Unions

Since the seniority system placed in effect was bona fide and not adopted by Pan Am as a "subterfuge to evade the purposes" of the Act, the Unions have not violated the Act by merely observing its terms. Nevertheless, Cook claims that the Unions have independently engaged in a subterfuge to evade the purposes of the ADEA.

Although the Unions have the burden of showing no subterfuge, *see Cipriano, supra*, 785 F.2d at 58, they have come forth with numerous affidavits, depositions and other evidence tending to show that there was no subterfuge. There is no evidence that their failure to challenge the Award was a stratagem or artifice to evade the requirements of the ADEA. *Carpenter v. Continental Trailways*, 635 F.2d 578, 581 (6th Cir.1980), *cert. denied*, 451 U.S. 986 (1981). That lack of evidence, combined with the legitimate business purpose of creating a fair, equitable and workable seniority system by preserving pre-merger expectations, compels this court to grant summary judgment in favor of defendants.

For the foregoing reasons, the motions for summary judgment dismissing the ADEA claims are granted.

Judgment is to be submitted on notice.

IT IS SO ORDERED.